No. _____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

**BLACK LIVES MATTER LOS ANGELES, et al.,**
Plaintiffs and Respondents,
v.

**CITY OF LOS ANGELES, et al.**
Defendants and Petitioners.

—————————————————

Appeal from the United States District Court
for the Central District of California
Case No. 2:20-cv-05027-CBM-AS
Hon. Consuelo B. Marshall

—————————————————

## DEFENDANTS' PETITION FOR PERMISSION TO APPEAL
## ORDER GRANTING CERTIFICATION OF PLAINTIFFS' CLASSES

—————————————————

**MICHAEL N. FEUER,** City Attorney (SBN 111529)
**SCOTT MARCUS,** Chief Assistant City Attorney (SBN 184980)
**JONATHAN H. EISENMAN,** Deputy City Attorney (SBN 279291)
**JOSEPH S. PERSOFF,** Deputy City Attorney (SBN 307986)
200 North Spring Street, City Hall, 14th Floor
Los Angeles, CA 90012
(213) 978-2212 | Jonathan.Eisenman@lacity.org

*Attorneys for Defendants and Petitioners*
CITY OF LOS ANGELES and CHIEF MICHEL MOORE

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... 2

TABLE OF AUTHORITIES ................................................... 4

INTRODUCTION .................................................................. 7

JURISDICTIONAL STATEMENT ...................................... 11

QUESTIONS PRESENTED ................................................ 12

STATEMENT OF THE CASE ............................................. 12

WHY REVIEW IS WARRANTED ...................................... 15

I.    It is manifest error to certify classes under Federal Rule of Civil Procedure 23(b)(3) without considering whether common questions predominate over individual ones, and equally a mistake to find commonality solely in the fact that the same policymakers oversaw innumerable different acts—or to make no commonality finding at all. ........................................................... 16

    A.    It is a per se abuse of discretion for a district court to certify a class under Federal Rule of Civil Procedure 23(b)(3) without finding that common questions predominate over individualized ones ................................................ 18

    B.    Finding commonality in the fact that the LAPD "ratified" hundreds of different allegedly culpable acts is the same as finding commonality in the bare fact that all plaintiffs' claims are brought against the same defendant. ................. 22

    C.    Nor can a commonality finding be sustained without reference to any facts or law at all ........................................ 23

    D.    Three other district courts in this Circuit, presented with materially similar putative classes, declined to certify them either for a lack of commonality or a lack of predominance. 24

II.    District courts within the Circuit are divided over whether California's Bane Act can be enforced in a class action, and the question has evaded resolution for nearly 20 years. ..................... 26

III.   Trying this case as a class action is impracticable, and it would amount to a waste of judicial resources were the City actually to do so against classes certified manifestly in error. ....................... 29

CONCLUSION ......................................................................... 32

APPENDIX ............................................................................. 33

CERTIFICATE OF COMPLIANCE ....................................... 51

PROOF OF SERVICE ............................................................ 52

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................. 18, 31

*Anti Police-Terror Project v. City of Oakland,*
No. 20-cv-03866-JCS, 2021 WL 4846958
(N.D. Cal. Oct. 18, 2021) .......................................................... 25, 28

*Berg v. Cnty. of L.A.,*
No. 2:20-cv-07870-DMG-PD (C.D. Cal. July 30, 2021) ..................... 31

*Chamberlan v. Ford Motor Co.,*
402 F.3d 952 (9th Cir. 2005) ..................................................... 15, 16

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ....................................................................... 17

*Craft v. Cnty. of San Bernardino,*
No. EDCV 05-359, 2006 WL 4941829
(C.D. Cal. Mar. 21, 2006) .......................................................... 27, 28

*Dalton v. Lee Publs., Inc.,*
625 F.3d 1220 (9th Cir. 2010) ......................................................... 29

*Don't Shoot Portland v. City of Portland*
No. 3:20-cv-00917-HZ, 2022 WL 2700307 (D. Or. July 12, 2022) ...... 25

*Erica P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011) ..................................................................... 20

*Felarca v. Birgeneau,*
891 F.3d 809 (9th Cir. 2018) ........................................................ 20

*Garza v. City of Sacramento,*
No. 2:20-cv-01229 WBS JDP, 2022 WL 2757600
(E.D. Cal. July 14, 2022) .............................................................. 26

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) .............................................................................. 17

*Gibson v. Local 40, Int'l Longshoremen's & Warehousemen's Union,*
    543 F.2d 1259 (9th Cir. 1976) ............................................................ 17

*Gonzales v. Arrow Fin. Servs., LLC,*
    233 F.R.D. 577 (S.D. Cal. 2006) ........................................................ 17

*Icon Desert Logistics v. City of Blythe Police Dep't,*
    No. 5:20-cv-02255-CAS-JCx, 2020 WL 7229853
    (C.D. Cal. Dec. 7, 2020) ...................................................................... 27

*Inda v. United Air Lines, Inc.,*
    565 F.2d 554 (9th Cir. 1977) ........................................... 17, 18, 19, 24

*Jordan v. Gardner,*
    986 F.2d 1521 (9th Cir. 1993) (en banc) .......................................... 20

*LMN Co-Operative, Inc. v. Cnty. of Kern,*
    No. F061786, 2012 WL 1868932 (Cal. Ct. App. May 23, 2012) ......... 27

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ............................................................ 19

*Lockett v. Cnty. of L.A.,*
    977 F.3d 737 (9th Cir. 2020) .............................................................. 20

*Microsoft Corp. v. Baker,*
    137 S. Ct. 1702 (2017) ......................................................................... 11

*Narouz v. Charter Communications, LLC,*
    591 F.3d 1261 (9th Cir. 2001) ............................................... 17, 19, 24

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022) (en banc) ........................................ 16, 29

*Sali v. Corona Regional Med. Ctr.,*
    909 F.3d 996 (9th Cir. 2018) .............................................................. 16

*Schilling v. Transcor Am., LLC,*
No. C 08–941, 2010 WL 583972 (N.D. Cal. Feb. 16, 2010) ............... 27

*Taggart v. Solano Cnty.,*
No. CIV-S-05-0783, 2005 WL 3325752
(E.D. Cal. Dec. 6, 2005) ................................................................ 27, 28

*United States v. Hinkson,*
585 F.3d 1247 (9th Cir. 2009) (en banc) ........................................... 19

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ................................................................ 17, 19, 22

## Statutes

42 U.S.C. § 1983 ............................................................................ 26, 28

Cal. Civ. Code § 52.1 .................................................... 12, 13, 26, 27, 28

Cal. Civ. Code § 52 ............................................................................. 28

## Other Authorities

Fed. R. Civ. P. 23(a) ................................................. 12, 14, 16, 17, 18, 23

Fed. R. Civ. P. 23(b) ................................................................... *passim*

Fed. R. Civ. P. 23(f) ............................................................................ 11

# INTRODUCTION

Over several days in the spring of 2020, thousands took to the streets of cities across America, including Los Angeles, to protest George Floyd's murder. The Los Angeles Police Department attempted to maintain order, or to restore it where people set fire to police cars and looted stores. As in Portland or Oakland or Sacramento—all cities that simultaneously saw protracted or widespread protests—police activity injured protesters in Los Angeles. In each of these four cities, protesters brought putative class actions alleging the police violated their Fourth Amendment rights.

But proving a Fourth Amendment violation requires an examination of the individual circumstances in which a plaintiff alleges his or her rights were violated. The district courts in Portland, Oakland, and Sacramento therefore refused to homogenize the Fourth Amendment claims of protesters who were injured while doing different things, in different places, at different times, and by different kinds of force. Finding either that the putative class members had insufficient facts in common or that individual fact questions predominated over common questions, those three district courts refused to certify classes.

The Los Angeles court, though, found (for instance) that "a common question about the LAPD's ratification" of each individual use of force, and relatedly, the LAPD's "failure to discipline the officers for any misconduct" were enough to consider the entire spectrum of possible Fourth Amendment excessive-force violations in one action. The district court made no finding as to whether individual questions predominated over common ones, but nonetheless certified three opt-out damages classes and an injunctive-relief class—the latter comprising people alleging their First Amendment rights were violated in different places, at different times, and in different ways.

Omitting a predominance finding is a per se abuse of discretion—a manifest error—when certifying opt-out damages classes. Defining commonality at a level so high as to capture any possible constitutional violation is also manifest error, or in any event a seriously questionable finding. These mistakes have significant consequences both for the members of the classes and the City of Los Angeles, and may affect litigants in similar putative class actions.

Consider, for example, that a person who alleges she was shot in the face with a less-lethal projectile in Downtown Los Angeles on one

8

night is now litigating her claim as if it were the claim of someone who was pushed to the ground in Hollywood on another night.  The difference between those claims isn't only quantitative; it's not just a question of who sustained a worse injury.  The difference is also qualitative.  A shove and the use of a less-lethal weapon are categorically two different kinds of force, and their use is justified under different circumstances and governed by different policies.  If both uses of force violated the Fourth Amendment, then both people are entitled to justice.  But the person who was shot in the face does not get justice in full measure if her claim is yoked to that of a person whose claim is that a police officer shoved him.

And while the City recognizes that people were injured, and that there were problems with LAPD's response to unprecedented events, the City and its taxpayers are also entitled to due process and justice— justice that is denied if the claim of a person who on one day, in one part of Los Angeles, was shoved to the ground while doing one thing is treated in common with the claim of another person who, on another day, was shot in the face while doing something else, somewhere else.

Highlighting the stark qualitative differences among the claims the district court aggregated should not obscure that there are also material quantitative differences in the claims. For while it is true that class-action defendants always face greater pressure to settle when presented with an aggregation of many quantitatively modest claims, there are claims in this case that are not quantitatively modest. For those that are, fee-shifting ensures an adequate incentive to bring individual constitutional claims. By nevertheless hitching modest claims to larger claims, the class certification order exerts settlement pressure against the City inordinate even compared to the class-action norm. Deferring review of the order until an appeal from the potentially enormous judgment that certification threatens would first require expending the judicial resources to hold a trial (sprawling, even as a class action), and second require the City's willingness to risk millions of dollars more in post-judgment interest and fees to take the appeal.

That the class certification order does not reckon adequately with commonality, and does not reckon at all with predominance, are sufficient reasons for this Court to consider an interlocutory appeal

from the class certification order in this case—but there are others. The City also argued orally that the district court could not certify classes on claims made under California's Bane Act, because the text of the Bane Act allows only individual actions. One district court in this Circuit has adopted the City's reading of the Act; two others read the Act to allow class claims. California's intermediate appellate court recognized that this issue split the federal courts, but avoided resolving it. The district court's certification order in this case did not address the question at all. It merits judicial resolution.

Given the likely consequences of error in the certification order—for both this and other actions—the Court should grant this petition and allow an interlocutory appeal from the district court's order.

## JURISDICTIONAL STATEMENT

Federal Rule of Civil Procedure 23(f) provides this Court "'unfettered discretion'" to review the district court's October 3, 2022, certification order. *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1709 (2017). This petition, filed 14 days thereafter, is timely. Fed. R. Civ. P. 23(f).

## QUESTIONS PRESENTED

I.  Is failing to consider whether "questions of law or fact common to class members predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), a manifest error?  Is certifying a class without analyzing whether "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2)—or by analayzing commonality only at a very high level of generality—likewise a manifest error?

II.    Can a claim under California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, be asserted on a class-wide basis?

## STATEMENT OF THE CASE

The plaintiffs in this case allege that they or their members were injured or wrongfully arrested by the Los Angeles Police Department while protesting George Floyd's death at one of four places on one of five days in 2020.  They filed a putative class action against the City of Los Angeles and LAPD Chief Michel Moore in both his individual and official capacities.  (The City and Chief Moore are collectively "the City.")  (Doc. No. 115.)  The operative second amended complaint alleges violations of the First and Fourth Amendments, and of California's Tom

Bane Civil Rights Act (Cal. Civ. Code § 52.1). *Id.* It also alleges state law assault, battery, and false arrest claims. *Id.* The plaintiffs seek damages and injunctive relief. *Id.*[1]

In due course, the plaintiffs moved for certification of four classes.

First, they asked for an "Injunctive Relief Class:"

> All persons who have in the past participated, presently are participating, or may in the future participate in, or be present at, demonstrations within the City of Los Angeles in the exercise of their rights of free speech, assembly and petition in general, and particularly as it relates to protesting police violence and discrimination against people of color, especially African-Americans.

Then they asked for an "Arrest Class:"

> Beginning May 29, 2020, and continuing through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who were arrested by the LAPD on misdemeanor charges of failure to obey a curfew, failure to disperse, failure to follow a lawful order of a police officer and/or unlawful assembly, and who were held on buses and subjected to prolonged tight hand-cuffing, denied access to bathrooms, water and food, and held in enclosed spaces without ventilation.

---

[1] Docket references are to the district court docket; page numbers reference documents' ECF headers.

An "Infraction Class:"

> Beginning May 29, 2020, and through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who were arrested and taken into custody, charged with infractions, and not released in the field, as required by Penal Code § 853.5.

And a "Direct Force Class:"

> Beginning May 29, 2020, and continuing through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who were struck by either "less-lethal weapons" (including 37mm and 40 mm projectiles, and bean-bag shotguns), batons, or otherwise physically struck by an LAPD officer, and who were neither violently resisting nor posing an immediate threat of violence or physical harm.

(App. 35–36.)

After briefing and argument, the district court issued an order certifying those four classes. It found, in relevant part, that the plaintiffs had satisfied Federal Rule of Civil Procedure 23(a)(2)'s requirement that "there are questions of law or fact common to the class" by showing: (1) as to the Direct Force Class, there is "a common question about the LAPD's ratification" of each individual use of force, and a "subsequent failure to discipline" officers "for any misconduct" (App. 40); (2) as to the Arrest Class, that "the proposed class members'

14

claims concerning their confinement and transportation are sufficiently common" (App. 41); and (3) as to the Infraction Class, simply that "there are common questions of law and fact" as to the Infraction Class's claims (App. 42). The district court made no commonality finding as to the Injunctive Relief Class. And while the plaintiffs sought to certify the Arrest, Infraction, and Direct Force Classes under Federal Rule of Civil Procedure 23(b)(3), the district court made no finding as to whether "the questions of law and fact common to class members predominate over any questions affecting only individual members."

## WHY REVIEW IS WARRANTED

Review of class certification decisions is most appropriate when "(1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th

Cir. 2005). A manifestly erroneous ruling warrants review, even absent a showing of another factor. *Id.* The certification order in this case satisfies all three of the *Chamberlan* factors.

I. **It is manifest error to certify classes under Federal Rule of Civil Procedure 23(b)(3) without considering whether common questions predominate over individual ones, and equally a mistake to find commonality solely in the fact that the same policymakers oversaw innumerable different acts—or to make no commonality finding at all.**

A district court cannot certify a class unless the party seeking certification "prove[s] the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc).[2]

_____

[2] Troublingly, the certification order in this case indicates that the district court in some instances merely took the plaintiffs' allegations as true and improperly placed the burden on the City to disprove those allegations. (App. 44, 45.) Its blanket-overruling of the City's evidentiary objections (App. 37–38) also raises doubts about how it weighed the evidence supporting certification. *See Sali v. Corona Regional Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) ("an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given").

"Before it can certify a class, a district court must be 'satisfied, after a rigorous analysis, that the prerequisites' of both Rule 23(a) and 23(b)(3) have been satisfied." *Id.* at 664 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The "both" in the preceding sentence is important, because commonality and predominance are two different things, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011), and "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

Because certification bears on the rights of absent members of a putative class, a district court *must* make findings on all the Rule 23 requisites before it can certify a class—even if there is no opposition to class certification. *E.g.*, *Gonzales v. Arrow Fin. Servs., LLC*, 233 F.R.D. 577, 581 (S.D. Cal. 2006); *see Gibson v. Local 40, Int'l Longshoremen's & Warehousemen's Union*, 543 F.2d 1259, 1263 n.2 (9th Cir. 1976) ("an examination of the record and rendition of a ruling [on the class nature of the suit] are independent obligations of the court"). The district court's order must provide its findings with enough specificity so that a reviewing court knows why the district court did what it did. *Narouz v.*

*Charter Communications, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2001);

*Inda v. United Air Lines, Inc.*, 565 F.2d 554, 562 (9th Cir. 1977).

A. **It is a per se abuse of discretion for a district court to certify a class under Federal Rule of Civil Procedure 23(b)(3) without finding that common questions predominate over individualized ones.**

The certification order contains no findings as to whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Nor does it contain any findings from which the district court's thoughts on the matter might be divined. *E.g.*, *Inda*, 565 F.2d at 562. There is certainly nothing from which to infer the district court did its duty "to take a close look" at the question. *Comcast Corp.*, 569 U.S. at 34 (internal quotation marks omitted). Moreover, in one of the few instances in which the order cites the relevant section of the rule, the order suggests that the district court misunderstood the law: Citing Rules 23(a)(2) and (b)(3) together, the court wrote, "[t]o satisfy the commonality requirement, there must be questions of law or fact common to a damages class." (App. 39.) *But see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997) ("the predominance criterion is far more demanding" than commonality).

If the district court misunderstood the law by combining the commonality and predominance inquiries—as it appears from the certification order that it did—then it committed a per se abuse of discretion; it made a manifest error requiring reversal. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). If the district court properly understood that commonality and predominance are two separate inquiries but *still* made no findings as to predominance before certifying the Direct Force, Arrest, and Infraction Classes, then it likewise made a legal error—it failed to comply with the requirements of Rule 23(b)(3)—and so again committed a per se abuse of discretion. *See Dukes*, 564 U.S. at 363 ("[Rule 23](b)(3) requires the judge *to make findings about predominance* and superiority before allowing the class," italics added). And if the district court did the work but left no written record of it, then that too augurs reversal. *Narouz*, 591 F.3d at 1266; *Inda*, 565 F.2d at 562.

Indeed, the only way in which the certification order *could potentially* survive this Court's review is if the Court opts to make its own finding that the facts support predominance. *E.g.*, *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

*Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001).  But then, the facts don't support predominance.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  What common inquiries predominate over the individualized Fourth Amendment inquiries underlying the damages classes' members' claims?  *See Lockett v. Cnty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (proving that a municipality's policymaking caused a constitutional tort requires demonstrating an underlying constitutional violation).  Over the individualized inquiries inherent in the claims of in excess of 4,000 class members, who allegedly suffered injury in different ways, on different days, and in different parts of Los Angeles, due to the alleged conduct of a multitude of different people, including different plaintiffs, different defendants, and different third party participants?  *See, e.g.*, *Felarca v. Birgeneau*, 891 F.3d 809, 816–19, 823 (9th Cir. 2018) (example of the depth of analysis to evaluate one type of force used against only four plaintiffs by two officers, and disagreement among the panel even as to that);

*Jordan v. Gardner*, 986 F.2d 1521, 1523–24 (9th Cir. 1993) (en banc)

(trial of First, Fourth, and Eighth Amendment claims against prison

officials, over a policy in place for *one* day at *one* prison, took six days of

live testimony on top of the review of eight depositions and the

reception of 56 exhibits.)

The Fourth Amendment requires individual determinations to

establish liability: Was each use of force excessive? Was each arrest

supported by probable cause? Were the conditions in which each

arrestee was transported reasonable? So how can the experience of one

person who was allegedly struck by one type of less-lethal munition on

June 2, 2020 in Hollywood establish the circumstances of another

person who was allegedly struck by a different type of less lethal

munition or a baton on May 30, 2020 miles away in the Fairfax

neighborhood? (*Compare* Doc. No. 136-1 at 48 ¶ 141 a*nd* Doc. No. 136-

10 at 1 ¶ 4 *with* Doc. No. 144-5 at 118, 38:7–39:4 *and* Doc. No. 169 at 24

¶ 3 *and* Doc. No. 144-5 at 57, 178, 23:4–23:13.) How can the experience

of someone transported in a Metro bus for five minutes between

locations in Downtown Los Angeles establish the circumstances of

someone transported in a (non-defendant) Los Angeles County Sheriff's

Department bus from Downtown Los Angeles to Westwood?  (*Compare* Doc. No. 144-5 at 202, 30:18–31:4 *with* Doc. No. 136-25 at 1–2, ¶¶ 2, 6, 10 *and* Doc. No. 144-4 at 22 ¶ 5.)

Those are the *fundamental* questions, and they overwhelm any inquiries that could possibly be common to the damages classes.  The district court's apparent failure even to consider this issue is a manifest error sufficient to grant this petition, and ultimately to reverse the certification of at least those classes.

**B.    Finding commonality in the fact that the LAPD "ratified" hundreds of different allegedly culpable acts is the same as finding commonality in the bare fact that all plaintiffs' claims are brought against the same defendant.**

Manifest error—or at least a seriously questionable result—crops up even in findings that the district court made.  Take the finding "that the Direct Force Class's *Monell* claims concern a common question about the LAPD's ratification of the individual officers' use of less-lethal force and subsequent failure to discipline the officers for any misconduct."  (App. 40)  As a common question, that is no more probative than asking, in a putative employment discrimination class

action against Wal-Mart, "[d]o all of us plaintiffs indeed work for Wal-Mart?" *Dukes*, 564 U.S. at 349.

True, answering the ratification question addresses an element of a *Monell* claim, but not in any way that gives "cause to believe that all [the plaintiffs'] claims can productively be litigated at once." *Id.* at 350. After all, asking whether the LAPD ratified many individual decisions is useless without examining the individual decisions. Because one could ask, "did the LAPD ratify the officers' conduct?" and say it is a question common to a class comprising "all people who allege a violation of *any* constitutional right." (The same is true of the question "did the LAPD discipline any of the officers?") In a putative class action against the City, these questions are no more likely "to generate common answers apt to drive the resolution of the litigation" than the fact the plaintiffs have in common that they've all sued the same defendant. *Id.* at 350 (cleaned up).

### C. Nor can a commonality finding be sustained without reference to any facts or law at all.

If there are serious doubts about the certification order's commonality finding as to the Direct Force Class, what about the other classes subject to Federal Rule of Civil Procedure 23(a)—a set that also

includes the Injunctive Relief Class?  As to the Injunctive Relief Class, the order contains no commonality finding at all, which presents the same problem for the Injunctive Relief Class as does the order's omission of a predominance finding for all of the damages classes.  And as to the Infraction Class, the order says only that the City's reason for opposing certification in the district court went to the merits of the Infraction Class's claims.  (App. 42.)  It then offers a conclusion that doesn't follow from that predicate:  "Accordingly, the Court finds that the commonality requirement is met for the Infraction Class because there are common questions of law and fact as to all three of the Infraction Class members' claims."  (*Id.*)  That is no more reasoned a finding than the findings that led this Court to vacate the certification orders in *Narouz*, 591 F.3d at 1266 or *Inda*, 565 F.2d at 562–63 as insufficiently developed.

> **D.    Three other district courts in this Circuit, presented with materially similar putative classes, declined to certify them either for a lack of commonality or a lack of predominance.**

The City is not pointing out the problems with the class certification order simply to get a better-developed order that achieves the same result.  The City is pointing out these problems because the

24

result in this case is an anomaly.  After simultaneous Floyd protests in

Oakland, Portland, and Sacramento:

- Plaintiffs in Oakland sought to certify a class of "all persons injured by tear gas deployed by the Oakland Police Department or its mutual aid allies during the George Floyd protests from May 29, 2020, to June 1, 2020." *Anti Police-Terror Project v. City of Oakland*, No. 20-cv-03866-JCS, 2021 WL 4846958, at *2 (N.D. Cal. Oct. 18, 2021).  The district court found that "[g]iven the fact-specific inquiry required to determine whether a particular use of force is reasonable, the proposed class definition, which encompasses *every* use of gas . . . over a four-day period, raises a multitude of individualized issues about the specific circumstances surrounding the use of tear gas." *Id.* at *8.  It held the predominance requirement was unmet and denied class certification. *Id.*

- Plaintiffs in Portland attempted to certify one subclass "of protesters who were subject to tear gas, 'flash bang' grenades, aerial distraction devices, rubber ball distraction devices, smoke grenades, and other similar uses of force . . . from May 25, 2020 to November 15, 2020" and another subclass "of protesters who were subjected to 'less lethal weapons' (FN303 launchers, 40mm launchers, batons, aerosol restraints . . . from May 25, 2020 to November 15, 2020." *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2022 WL 2700307, at *9–10 (D. Or. July 12, 2022).  The district court denied class certification because it found the plaintiffs couldn't establish commonality: "It may be difficult to resolve this [Fourth Amendment] issue based on the events of a single night, much less over the course of 100 nights of protest, because each night involved a variety of different protests, in different locations, and with different circumstances. *Id.* at *11.

- Plaintiffs in Sacramento asked the district court to certify a class of "[a]ll persons present on May 30, 2020 and May 31, 2020, at the demonstrations in downtown Sacramento, who were injured by less-lethal impact weapons, referred to as 'beanbag rounds,' 'baton rounds,' or 'rubber bullets.'" *Garza v. City of Sacramento*, No. 2:20-cv-01229 WBS JDP, 2022 WL 2757600, at *1 (E.D. Cal. July 14, 2022). The district court found that the plaintiffs couldn't establish predominance when, among other things, "[e]ach suffered different injuries from one another under different circumstances, after engaging in different conduct from one another." *Id.* at *6. And it had no "reason to believe that these and other disparities would not exist between most of all members of the putative class, which plaintiffs contend consists over one hundred individuals." *Id.* at *6.

The reasons against class certification identified by those three district courts exist in this case to the same—and in some cases to a greater—extent.

## II. District courts within the Circuit are divided over whether California's Bane Act can be enforced in a class action, and the question has evaded resolution for nearly 20 years.

There is another issue that would benefit from this Court's review: The Tom Bane Civil Rights Act provides in relevant part that "[a]ny individual . . . may institute and prosecute in their own name and on their own behalf a civil action for damages . . . ." Cal. Civ. Code § 52.1(c). Though there are important differences, the Bane Act functions as a rough state-law analog to 42 U.S.C. § 1983. One district

26

court in this Circuit has found that the language in § 52.1(c) precludes adjudicating Bane Act claims in class actions. *Taggart v. Solano Cnty.*, No. CIV-S-05-0783, 2005 WL 3325752, at *4 (E.D. Cal. Dec. 6, 2005); *see also Icon Desert Logistics v. City of Blythe Police Dep't*, No. 5:20-cv-02255-CAS-JCx, 2020 WL 7229853, at *7 (C.D. Cal. Dec. 7, 2020) (a party cannot assert a Bane Act claim on a non-party's behalf). Two district courts disagree. *Craft v. Cnty. of San Bernardino*, No. EDCV 05-359, 2006 WL 4941829, at *3 (C.D. Cal. Mar. 21, 2006); *Schilling v. Transcor Am., LLC*, No. C 08–941, 2010 WL 583972, at *11 (N.D. Cal. Feb. 16, 2010). The California Court of Appeal noted this split, observed that the question remains open, and then, in an unpublished decision, avoided answering it. *LMN Co-Operative, Inc. v. Cnty. of Kern*, No. F061786, 2012 WL 1868932, at *3–5 (Cal. Ct. App. May 23, 2012).

At the class certification hearing, the City argued this issue: It contended the Bane Act's text prohibits the plaintiffs' assertion of Bane Act claims on behalf of each of the damages classes. The district court did not address the issue in its ruling, allowing the plaintiffs to assert Bane Act claims on a class-wide basis. It is, however, an important

issue.  Plaintiffs commonly assert Bane Act claims in class actions. *E.g.*, *Anti Police-Terror Project*, 2021 WL 4846958, at *8.  Bane Act claims, like section 1983 claims, allow fee shifting, Cal. Civ. Code § 52.1(i); unlike section 1983 claims, Bane Act claims provide minimum statutory damages, Cal. Civ. Code §§ 52.1(c), 52—for several reasons a valuable trait for parties advocating class treatment of their claims. (*See* Doc. No. 148 at 12 ["Defendants wrongly contend that the absence of a common methodology to determine individualized damages defeats commonality . . . § 52.1 statutory damages satisfy this standard . . . ."].)

This Circuit appears never to have addressed the question whether a Bane Act claim can be asserted in a class action.  In the 17 years since *Taggart* and 16 years since *Craft* disagreed with *Taggart*, it seems that this unsettled issue continues to evade review.  The Court should take this opportunity to settle the dispute among the district courts.

**III. Trying this case as a class action is impracticable, and it would amount to a waste of judicial resources were the City actually to do so against classes certified manifestly in error.**

It imposes significant enough settlement pressure on a defendant to face virtually any kind of class action. *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 685 (Lee, J., dissenting) ("If trials these days are rare, class action trials are almost extinct. And it is no wonder why class actions settle so often: If a court certifies a class, the potential liability at trial becomes enormous, maybe even catastrophic, forcing companies to settle even if they have meritorious defenses."); *Dalton v. Lee Publs., Inc.*, 625 F.3d 1220, 1221–22 (9th Cir. 2010) (O'Scannlain, J., dissenting) (noting the unique settlement pressures of class action suits foreclosing appellate review). But this is not the typical class action case in which the City faces an aggregation of quantitatively modest claims that add up to "enormous, maybe even catastrophic" liability. It is a case in which the City faces an unwieldy hodgepodge of claims, some of which are quite serious, and many of which likely could

be litigated on their own (particularly given the availability of fee-shifting).[3]

Absent this Court's review now, the City must nevertheless face that agglomeration, and the concomitant risk of eight- or nine-figure liability (or more) at trial—or else settle with a class it should not be facing in the first place. The alternative—seeking this Court's review *after* a massive trial—would, with such a judgment, force the City to risk millions of dollars more in post-judgment interest and fees just to vindicate its position. Given the issues with the class certification order, no defendant ought to be put in that position.

It isn't only the City's rights that are imperiled here. Class certification is supposed to be a rigorous process in part because of the effects class-wide adjudication can have on absent class members. This order takes absentees' potentially serious Fourth Amendment excessive force claims and puts them in an opt-out class without considering whether the individualized nature of their claims predominates over

_____

[3] In addition to this lawsuit, at least 32 other lawsuits involving 70 different plaintiffs have been filed against the City or individual police officers arising out of the Floyd protests. (Doc. No. 144 at 11.)

facts common to the group. *Cf. Amchem Prods.*, 521 U.S. at 623–24. Class members with serious claims may find them devalued as part of their class-wide treatment. And then there is the risk of being stuck with an unfavorable judgment by inadvertently failing to opt out, which—for someone who has suffered a Fourth Amendment injury—is not the same as, e.g., accidentally limiting a claim for a small overcharge on a bill to a fraction of that claim's value.

Addressing the problems with this class certification order now will have salutary effects beyond this case, as there is at least one other similar putative class action pending against Los Angeles County before another judge of the same district court. Second Am. Compl., *Berg v. Cnty. of L.A.*, No. 2:20-cv-07870-DMG-PD (C.D. Cal. July 30, 2021) (Doc. No. 63.)

But other case or not, getting the certification decision in this case wrong will have serious and immediate negative consequences *here*. Interlocutory review of the decision is necessary to avert them.

## CONCLUSION

This Court should grant the petition.

Dated:  October 17, 2022

LOS ANGELES CITY ATTORNEY'S OFFICE

Michael N. Feuer
Scott Marcus
Jonathan H. Eisenman
Joseph S. Persoff

s/ Jonathan H. Eisenman
Jonathan H. Eisenman

# APPENDIX

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  BLACK LIVES MATTER LOS ANGELES, et al, | Case No.:  2:20-cv-05027-CBM-(ASx) |
| 12 | **ORDER RE: MOTION TO** |
| 13          Plaintiffs, <br> v. | **CERTIFY CLASS [136]** |
| 14  CITY OF LOS ANGELES, et al, | |
| 15          Defendants. | |
| 16 | |
| 17 | |

18      The matter before the Court is Plaintiffs' Motion for Class Certification.

19  (Dkt. No. 136.)

20                          **I.      BACKGROUND**

21      This putative class action concerns the response of the Los Angeles Police

22  Department ("LAPD") to protests and demonstrations which occurred throughout

23  Los Angeles in late May and early June of 2020 in response to the death of George

24  Floyd.  Black Lives Matter and other named Plaintiffs move for an order

25  certifying one class seeking injunctive relief under Rule 23(b)(2) and three classes

26  seeking damages under Rule 23(b)(3) or 23(c)(4), and appointing Plaintiffs'

27  counsel as class counsel under Rule 23(g).

28

1

**1.  Injunctive Relief Class**

Plaintiffs' injunctive relief claims concern their First Amendment right to protest.  They allege that the LAPD has a long history of settlements and consent decrees resulting from LAPD's historical pattern and practice of aggressive and unlawfully shutting down First Amendment protected protests through failing to provide proper unlawful assembly notices, failing to provide reasonable opportunity to disperse, failing to provide directions for dispersal, unleashing unreasonable and excessive force against protestors, kettling and detaining or arresting protestors (including arresting on charges entitling the arrestee to immediate field release on a promise to appear), engaging in punitive arrests, holding arrestees on buses without water and bathrooms in tight handcuffs, and failing to release (or not arresting but only citing) people entitled to immediate release on their own recognizance.

The "Injunctive Relief Class" is defined as "[a]ll persons who have in the past participated, presently are participating, or may in the future participate in, or be present at, demonstrations within the City of Los Angeles in the exercise of their rights of free speech, assembly and petition in general, and particularly as it relates to protesting police violence and discrimination against people of color, especially African-Americans.

The proposed class representatives for the Injunctive Relief Class are Black Lives Matter Los Angeles and CANGRESS (d/b/a Los Angeles Community Action Network).

**2.  Damages Classes**

Plaintiffs seek certification for three classes seeking damages:

(1) the "Arrest Class," which is defined as "[b]eginning May 29, 2020, and continuing through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who

were arrested by the LAPD on charges of failure to obey a curfew, failure to disperse, failure to follow a lawful order of a police officer and/or unlawful assembly, and who were held on buses and subjected to prolonged tight hand-cuffing, denied access to bathrooms, water and food, and held in enclosed spaces without ventilation."

The proposed class representatives for the Arrest Class are Alicia Barrera-Trujillo, Krystle Hartsfield, Nelson Lopez, Nadia Khan, Devon Young, Linus Shentu, Alexander Stamm, Steven Roe, Maia Kazin and Jonathan Mayorca.

(2) the "Infraction Class," which is defined as "[b]eginning May 29, 2020, and through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who were arrested and taken into custody, charged with infractions, and not released in the field, as required by Penal Code § 853.5."

The proposed class representatives for the Infraction Class are Jonathan Mayorca, Nadia Khan, Nelson Lopez, Alicia Barrera-Trujillo, Maia Kazin, and Devon Young.

(3) the "Direct Force Class," which is defined as "[b]eginning May 29, 2020, and continuing through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who were struck by either "less-lethal weapons" (including 37mm and 40 mm projectiles, and bean-bag shotguns), batons, or otherwise physically struck by an LAPD officer, and who were neither violently resisting nor posing an immediate threat of violence or physical harm.

The proposed class representatives for the Arrest Class are David Contreras, Tina Črnko, Abigail Rodas, Christian Stephen Roe, Shannon Lee Moore, Clara Aranovich, and Eva Grenier.

1

## II.   STATEMENT OF THE LAW

2      Federal Rule of Civil Procedure 23(a) requires that a proposed class satisfy

3   the following four requirements for class certification:  (1) numerosity; (2)

4   commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P.

5   23(a).   In addition, the proposed class must satisfy one of the three options under

6   Rule 23(b)(1), (2) or (3).  Rule 23(b)(2) provides that a class action may be

7   maintained if Rule 23(a) is satisfied and if "the party opposing the class has acted

8   or refused to act on grounds that apply generally to the class, so that final

9   injunctive relief or corresponding declaratory relief is appropriate respecting the

10   class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) provide that a class

11   action may be maintained if "the court finds that the questions of law or fact

12   common to class members predominate over any questions affecting only

13   individual members, and that a class action is superior to other available methods

14   for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

15   Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or

16   maintained as a class action with respect to particular issues."  Fed. R. Civ. P.

17   23(c)(4).

18      When analyzing class certification, the court takes the complaint's

19   allegations as true, and performs a "rigorous analysis," which may require it "to

20   probe behind the pleadings."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352

21   (2011).

22

23

## III.   DISCUSSION

24   **1. Evidentiary Objections**

25      Defendants filed over 100 objections to evidence submitted by Plaintiffs on

26   the grounds that the evidence is inadmissible.  The Ninth Circuit has held that, for

27   purposes of a motion for class certification, "[t]he court's consideration [of

28   evidence] should not be limited to only admissible evidence."  *Sali v. Corona*

4

*Regional Medical Center*, 909 F.3d 996, 1004 (9th Cir. 2018).

Accordingly, the Court overrules the objections and considers the evidence for purposes of this Motion.

## 2. Definiteness

Federal Rule of Civil Procedure 23 requires that the class is defined objectively, is capable of membership ascertainment when appropriate, and is defined without regard to the merits of the claim or the seeking of particular relief. *Melgar v. CSK Auto, Inc*., 681 F. App'x 605, 607 (9th Cir. 2017) (citing *Vizcaino v. U.S. Dist. Ct*., 173 F.3d 713, 721–22 (9th Cir. 1999)).  The Court finds that the class definitions meet the definiteness requirements of Rule 23.

## 3. Numerosity

"In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."  *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)

Plaintiffs contend that all four classes — the injunctive relief class, arrest class, infraction class, and direct force class — meet the numerosity requirement because (1) the injunctive relief class includes "tens of thousands of people," (2) the arrest class includes approximately 4000 people, (3) the infraction includes "at least 800 [or] more" people, and (4) the direct force class includes "at least 75 people, likely well in excess of 100." (*See* Sobel Class Decl. ¶¶ 44–47, 91, 100, 104.)

Defendants do not dispute that the injunctive relief, infraction, and arrest classes meet the numerosity requirement.  Defendants contend, however, that the direct force class does not meet the numerosity requirement because "the size of the proposed class is approximately equal to the number of persons who have already brought individual lawsuits."  (Opp'n – Dkt. No. 144 at 12–13.)

5

1   Defendants base this argument on the facts that (1) 32 other lawsuits have been

2   filed against the City alleging unreasonable force against protestors at the same

3   demonstrations, and (2) there are already approximately 70 other individual claims

4   that have been filed against the City.  (COE, Exs. 25-56.)

5         Plaintiffs' 100-person estimate of the size of the force class excluded those

6   known to have already filed their own lawsuits.  Thus, Plaintiffs estimate that

7   there are 100 or more force victims who have not filed their own lawsuit.  (Sobel

8   Supp. Dec. – Dkt. No. 150 at ¶16.)

9         Accordingly, the Court finds that the numerosity requirement is met for all

10   of the proposed classes.

11

12   **4. Commonality**

13         To satisfy the commonality requirement, there must be questions of law or

14   fact common to a damages class.  Fed. R. Civ. P. 23(a)(2); 23(b)(3).  To establish

15   commonality, Plaintiff need only point to a single common question to the class.

16   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011).  Where "examination

17   of all the class members' claims will produce a common answer" to a central

18   common question, Rule 23(a) commonality is met.  *Id.* at 352.

19   **4.1. Direct Force Class**

20         The members of the Direct Force Class allege claims for (1) violation of the

21   Fourth and Fourteenth Amendments; (2) violation of California's Bane Act; (3)

22   assault; (4) battery, and (5) *Monell* liability.  (Compl. – Dkt. No. 115 at 63–67.)

23         First, Defendants contend that the commonality requirement is not met on

24   the grounds that the excessive force claims under the Fourth Amendment cannot

25   be proven via common evidence because the claims require examination of the

26   totality of the circumstances surrounding the use of force, including the severity of

27   the crime at issue, whether the suspect posed an immediate threat, and whether the

28   suspect was actively resisting arrest.  *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1163

6

(9th Cir. 2011).  Second, Defendants contend that Plaintiffs' Bane Act claim will require establishing both a constitutional violation and that the officer had a specific intent to violate the plaintiff's right to freedom from unreasonable seizure. *Murchison v. Cnty. of Tehama*, 69 Cal. App. 5th 867, 896 (Cal. Ct. App. 2021). Third, Defendants contend that the claims for assault and battery will also turn on the reasonableness of the force used under the individual circumstances. *J.J. v. M.F.*, 223 Cal. App. 4th 968, 976 (Cal. Ct. App. 2014).  Fourth, as to the *Monell* claim, Defendants contend that Plaintiffs have not demonstrated any custom, policy, or practice of a failure to train.

Plaintiff need only identify a single common question to the class to establish commonality. *Wal-Mart Stores, Inc.*, 564 U.S. at 358.  Here, the Court finds that the Direct Force Class's *Monell* claims concern a common question about the LAPD's ratification of the individual officers' use of less-lethal force and subsequent failure to discipline the officers for any misconduct.  These *Monell* issues present "important questions apt to drive the resolution of the litigation." *Torres v. Mercer Canyons Inc*., 835 F. 3d 1125, 1134 (9th Cir. 2016). Furthermore, in *Multi-Ethnic Immigrant Worker Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 635, C.D. Cal. Dec. 14, 2007), the court found that, while "the conduct of individual officers in the field may present individual issues of reasonableness . . . the individual issues share a common source: the command decisions to disperse the crowd and to authorize the use of less-lethal munitions if the crowd's behavior warranted it."   This analysis is persuasive, and thus the Court finds that the LAPD command's decision to employ less-lethal munitions in this case is a common question for the Direct Force class.  Accordingly, the Court finds that the commonality requirement is met for the Direct Force class.

### 4.2. Arrest Class

The members of the Arrest Class allege two claims: (1) violation of their

1   Fourth and Fourteenth Amendments rights; and (2) False Arrest/False
2   Imprisonment.  (Compl. – Dkt. No. 115 at 60–61, 65.)

3        Defendants contend that the Arrest Class does not have commonality on the
4   grounds that (1) its claims cannot be proven via common evidence, because
5   "claims challenging conditions of confinement turn on the specific facts of the
6   confinement, and the putative class members' experiences varied significantly
7   based on where they were arrested, when and how they were transported, and
8   where they were transported to"  (Opp'n – Dkt. No. 144 at 20), and (2) its claims
9   that they were placed on a bus and placed in zip-tie handcuffs are insufficient
10  alone to establish a violation of their Fourth and Fourteenth Amendment rights.
11  See *Panagacos v. Towery*, 2014 U.S. Dist. LEXIS 98982, at *16 (W.D. Wash.
12  July 21, 2014), affirmed by 692 Fed. Appx. 330 (9th Cir. 2017) ("Panagacos
13  claims the zip tie on her wrist was too tight and left imprints on her skin, and that
14  the conditions during holding and transport were overcrowded. This did not
15  violate any constitutional rights . . . .")

16       For purposes of class certification, the merits of a class's claims are
17  considered "only to the extent that they are relevant to whether the Rule 23
18  prerequisites are satisfied."  *Amgen Inc. v. Ct. Retirement Plans and Trust Funds*,
19  568 U.S. 455, 466 (2013).  Both of Defendants' arguments address the merits of
20  the proposed class members' claims, but they do not demonstrate how the
21  differences in length of time of a violation caused by Defendants defeat
22  commonality.  Furthermore, the Court finds that, for purposes of class
23  certification, the proposed class members' claims concerning their confinement
24  and transportation in law enforcement vehicles are sufficiently common based on
25  the evidence cited by Plaintiffs.  (*See* COE – Ex. 12, 12, 21:23-22:11, 22:20-
26  23:11; Ex. 16, 42:23 – 43:1; Ex. 20, 30:18-31:4; Ex. 19, 46:15-18; Ex. 24, 18:5-8;
27  Ex. 21, 29:5-13; Ex. 22, 23:5-7; Ex. 18, 21:6-10; Ex. 17, 27:25-28:3.)
28       Accordingly, the Court finds that the commonality requirement is met for

1   the Arrest Class.

2

3   **4.3. Infraction Class**

4   The members of the Infraction Class allege that the LAPD (1) violated their

5   Fourth and Fourteenth Amendment rights, (2) violated the Bane Act, and (3)

6   violated California Penal Code Section 853.5 when it falsely arrested when issuing

7   infractions to the class members.

8   Defendants contend that the Infraction Class members' claims do not meet

9   the commonality requirement because they do not give rise to a cause of action.

10   *See People v. McKay*, 27 Cal. 4th 601, 605 (2002) ("[C]ustodial arrests for fine-

11   only offenses do not violate the Fourth Amendment and [] compliance with state

12   arrest procedures is not a component of the federal constitutional inquiry.");

13   *Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("We thought it obvious that the

14   Fourth Amendment's meaning did not change with local law enforcement

15   practices—even practices set by rule.").

16   For purposes of class certification, however, the merits of a class's claims

17   are considered "only to the extent that they are relevant to whether the Rule 23

18   prerequisites are satisfied."  *Amgen Inc.*, 568 U.S. at 466.  Thus, the fact that

19   answers to common merits questions may favor Defendants is irrelevant to class

20   certification because "Rule 23(b)(3) requires a showing that questions common to

21   the class predominate, not that those questions will be answered, on the merits, in

22   favor of the class."  *Id*. at 459.

23   Here, whether the Infraction Class's claims may give rise to a cause of

24   action is a question based upon the merits of Plaintiffs' claims, and thus does not

25   relate to the commonality of their claims for purposes of class certification.

26   Accordingly, the Court finds that the commonality requirement is met for

27   the Infraction Class because there are common questions of law and fact as to all

28   three of the Infraction Class members' claims, and Defendants' attack of the

9

1  merits of the Fourth and Fourteenth Amendment claims is premature at the class
2  certification stage.

3

4  **5. Typicality**

5      "The test of typicality is whether other members have the same or similar
6  injury, whether the action is based on conduct which is not unique to the named
7  plaintiffs, and whether other class members have been injured by the same course
8  of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)
9  (citations omitted). Claims are typical "if they are reasonably coextensive with
10 those of absent class members," and they need not be "substantially identical."
11 *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon v.*
12 *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

13     **5.1. Direct Force Class**

14     Defendants contend that the Direct Force class does not meet the typicality
15 requirement because its class representatives experienced different types of force:
16 some allege harm from a 40mm less-lethal launcher; some allege harm from a
17 37mm less-lethal launcher; some allege harm from beanbag shotguns; and some
18 allege harm from batons. Defendants contend this is significant because one of
19 the claims for this class is a *Monell* failure to train claim, and each weapon used
20 by the LAPD requires different training. Defendants also dispute the typicality of
21 class representative Ms. Rodas' claims, because one of her companions told the
22 medical staff that treated her wounds in the emergency room that her injuries were
23 from a fall. (COE, Ex. 11, 493–10; Dep. Ex. 10,016). The Direct Force Class's
24 *Monell* claim, however, is one of several claims premised on Defendants' use of
25 force. Furthermore, Ms. Rodas declares that she fell as a result of being hit by a
26 rubber bullet that shattered her jaw. Thus, there is evidence supporting typicality
27 for her claims.
28     Accordingly, the Court finds that the Direct Force Class meets the typicality

requirement.

## 5.2. Infraction Class

Defendants contend that the claims of Plaintiffs Mayorca, Kazin, and Young of the infraction class do not meet the typicality requirement because they were charged with misdemeanors.  (COE, Ex. 6, No. 20, Ex. 7, No. 17; Dkt. 136-25, ¶ 5.)  However, Plaintiffs contend that the class members who were arrested for committing misdemeanors, but only charged with an infraction, should not have been arrested for committing misdemeanors and are thus properly included in the Infraction Class.  The Court finds that the Infraction Class's allegations satisfy the typicality requirement.

## 5.3. Arrest Class

Defendants contend that the Arrest Class does not satisfy the typicality requirement because the class representatives (1) do not have Article III standing to seek recovery for an alleged condition of confinement, (2) were not charged with misdemeanors and therefore are not members of the proposed class, and (3) due to the varying experiences of each person's transport (length, location, and method of transportation), no representative's claims are typical of the class they seek to represent.  The Court addresses each argument in turn.

### 5.3.1. Standing

Standing is a threshold issue in any lawsuit and, in the class action context, the standing inquiry focuses on the class representatives.  *NEI Contr. & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc*., 926 F.3d 528, 532 (9th Cir. 2019).  For a plaintiff to have standing, the plaintiff must have suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

11

1    Defendants contend that the class representatives of the Arrest Class do not

2    have standing based on the following: (1) Plaintiff Roe is the only plaintiff who

3    requested use of the bathroom and was denied; (2) Plaintiffs Roe and Barrera-

4    Trujillo were the only ones to request water and be denied; (3) Plaintiff Hartsfield

5    testified she was allowed to drink water without requesting it; (4) none of the

6    Plaintiffs requested food, and no Plaintiff put forth evidence they were subjected

7    to unsanitary conditions on the bus due to lack of bathroom access; and (5) there is

8    no evidence that Plaintiffs Mayorca, Stamm, Kazin, or Young requested that their

9    handcuffs be loosened.

10    The Court finds that the members of the Arrest Class allege concrete and

11    particularized violations of their constitutional rights in the Complaint.

12    Furthermore, the fact that some members of the Arrest Class did not explicitly

13    request water or access to a restroom is not sufficient to defeat class certification

14    at this stage, because the merits of a class's claims are considered "only to the

15    extent that they are relevant to whether the Rule 23 prerequisites are satisfied."

16    *Amgen Inc. v. Ct. Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

17    5.3.2. Misdemeanor Charges

18    Defendants contend that Plaintiffs Lopez, Khan, Barrera-Trujillo, and

19    Young do not meet the typicality requirement because "they were not charged

20    with misdemeanors, as the proposed class definition requires."  (Opp'n – Dkt. No.

21    144 at 25.)  (Dkt. No. 136, p. 4; COE, Ex.5, No. 20, Ex. 8, No. 17, Ex. 9, No. 20.)

22    Plaintiffs submitted evidence demonstrating that each of these class

23    members were charged with misdemeanors for violation of LAMC § 8.78 (they

24    state that Kahn was mistakenly listed in place of Kazin, who was also charged

25    with a misdemeanor).  (See Exs. 149-1, 149-6, and 149-11 – Dkt. No. 168).  Thus,

26    the Court finds that these Plaintiffs sufficiently demonstrated typicality.

27    5.3.3. Varying Experiences

28    Defendants contend that the Plaintiffs do not meet the typicality

12

requirement because of their "varying transportation experiences." (Opp'n – Dkt. No. 144 at 26.)  In support of this argument, they cite to evidence demonstrating that (1) Mr. Roe was arrested downtown on May 29, 2020 and transported on a bus to a jail "only a few blocks away," (2)  Mr. Stamm was arrested in Hollywood on June 1, 2020 and transported by a Sheriff's Department bus to Westwood, and (3) Ms. Hartsfield was arrested in the Fairfax area on May 30, 2020 and transported via LAPD van to Van Nuys.  (Dkt. No. 15 at 64, 73–74; COE, Ex. 10, No. 9.)  Thus, Defendants contend that there is no typicality because the vehicles were different, and the conditions of the transportation were different (an LAPD van seats 12 people, a Sheriff's bus seats about 40, an MTA bus seats about 38, and Sheriff's and MTA buses have windows, while other vehicles did not. (COE, Ex. 2, ¶ 5.)

The Court finds that the variety of the distances traveled and types of vehicles used, the overarching allegations does not undermine the substantive typicality of the Arrest Class's claims, including the allegations that each class member was arrested, handcuffed, and confined in a law enforcement vehicle.

## 5.4. Injunctive Class

The Court finds that the typicality requirement is satisfied for the Injunctive Class because each class member participated in recent protests, intends to participate in future protests, and experienced the same conduct of the LAPD alleged in the Complaint.

## 6.  Adequacy of Representation

Rule 23(a)(4)'s requirements that the representative parties will fairly and adequately protect the interests of the class are met when (1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class, and (2) counsel for plaintiffs are competent to represent the class.

*Lenvill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978).

**6.1. Proposed Class Representatives**

There are nineteen proposed class representatives in this case: Black Lives Matter Los Angeles; CANGRESS; Alicia Barrera-Trujillo; Krystle Hartsfield; Nelson Lopez; Nadia Khan; Devon Young; Linus Shentu; Alexander Stamm; Steven Roe; Maia Kazin; Jonathan Mayorca; David Contreras; Tina Črnko; Abigail Rodas; Christian Stephen Roe; Shannon Lee Moore; Clara Aranovich; and Eva Grenier.

As a threshold matter, Plaintiffs' counsel declared that Plaintiffs Jeffrey Trotter and Orlando Hinkston, who Defendants thought were named Plaintiffs, were never intended to be class representatives.  (Sobel Decl. – Dkt. No. 150, ¶22).  Thus, the Court does not consider them as class representatives.

Defendants challenge the adequacy of the named Plaintiffs on three separate grounds: (1) a finding of adequacy is precluded because Black Lives Matter Los Angeles, CANGRESS, Steven Roe, Tina Crnko, Abigal Rodas, Eva Grenier, and David Contreras, did not submit declarations or deposition testimony regarding the adequacy requirement; (2) the declarations that were submitted are inadequate because they were prepared in support of Plaintiffs' earlier request for a restraining order; and (3) representatives Eva Grenier and Jonathan Mayorca attended the protests as a legal observer and for the purpose of filming, respectively.

Plaintiffs submitted the declarations of Black Lives Matter Los Angeles, CANGRESS, Steven Roe, Tina Crnko, Abigal Rodas, and Eva Grenier after the Court requested that they do so.  (See Decl. – Dkt. No. 136.)  Furthermore, the fact that some of the class representatives' declarations were prepared in support of the Motion for preliminary injunction has no bearing on the adequacy of their representation.  As to Ms. Grenier and Mr. Mayorca, they allege claims based on

14

the LAPD's use of force.  Their claims do not implicate the First Amendment.
The Court finds no reason to distinguish between observer and protester, because
the distinction has no relevance to the LAPD's use of force.  The Court thus finds
that each class member has sufficiently demonstrates that they will fairly and
adequately protect the interests of their respective classes and certifies the
proposed class representatives for their respective classes.

### 6.2. Class Counsel

Plaintiffs contend that their lead counsel — Paul Hoffman, Carol Sobel, and
Barry Litt — are qualified to represent the class because they have experience
litigating class action civil rights cases.  *See Multi-Ethnic Immigrant Workers Org.
Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) (concerning
LAPD arrests and brutality at immigrant rights protest); *Aichele v. City of Los
Angeles*, 314 F.R.D. 478 (C.D. Cal. 2013) (concerning LAPD arrests at Occupy
LA area on City Hall lawn); *Chua v. City of Los Angeles*, 2017 WL 10776036
(C.D. Cal. May 25, 2017) (concerning LAPD arrests at 2014 Ferguson protests in
downtown LA).  All three attorneys filed declarations stating that they have
extensive experience in these types of cases, and that they are "considered among
the premiere attorneys in Los Angeles for such work."  (Litt Decl. – Dkt. No. 136-
43; Hoffman Decl. – Dkt. No 136-44; Sobel Decl. – Dkt. No. 136-1.)

Defendants do not dispute that the designated counsel has sufficient
experience.  They do, however, contend that Ms. Sobel and her law office should
be disqualified for two reasons: (1) Ms. Sobel "will be a necessary witness at trial"
because some of Plaintiffs' claims rely on her personal knowledge and expert
testimony; and (2) Weston Rowland (an attorney at Ms. Sobel's firm) is a
necessary and percipient witness to proposed class representative Grenier's claims
because he attended one of the protests with her.

Plaintiffs consented to Ms. Sobel's representation and declared that they

1   understood that there is a remote possibility that she could testify.  (Abdullah
2   Decl. – Dkt. No. 157 at ¶¶ 17–19.)  *See Maxwell v. Superior Court*, 30 Cal. 3d
3   606, 620 n. 9 (1982) (finding that an attorney-witness need not withdraw from a
4   civil case if the client consents in writing to continued representation); *GayDays,*
5   *Inc. v. Master Ent., Inc.*, No. CV 07-6179-ABC (JWJX), 2008 WL 11339109, at
6   *2 (C.D. Cal. July 8, 2008) (same).  Furthermore, Mr. Rowland did not witness
7   any of the use of force that Ms. Grenier's claims are based upon, and he attended
8   the protest for the purpose of gathering evidence for the impending lawsuit being
9   filed based on police conduct at earlier demonstrations.
10      Accordingly, the Court finds that class counsel is qualified to represent
11   Plaintiffs.
12
13   **7.  Superiority and Manageability**
14      Rule 23(b)(3) requires that class adjudication be "superior to other available
15   methods" and identifies several factors, including individual class member interest
16   in controlling the litigation; the existence of other pending litigation on the same
17   controversy; and manageability.  The United States Supreme Court has held that
18   the main consideration is the existence of numerous claims too small to litigate
19   individually.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)
20   (holding that the purpose "at the very core of the class action mechanism" is to
21   make adjudications for "small recoveries" viable.)
22      The Court finds that the class members' claims here are not significant
23   enough to justify individual litigation for the vast majority of class members.
24   Furthermore, manageability is demonstrated by the fact that similar cases have
25   been certified.  Finally, liability can be readily determined on a class-wide basis.
26      Accordingly, the Court finds that the superiority and manageability
27   requirements are satisfied.
28

16

## IV.  CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' Motion and certifies the four proposed classes.

**IT IS SO ORDERED.**

DATED:  OCTOBER 3, 2022

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

17

50

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 5(c)(1) and 32(g), I certify that this DEFENDANTS' PETITION FOR PERMISSION TO APPEAL ORDER GRANTING CERTIFICATION OF PLAINTIFFS' CLASSES contains 5,199 words, excluding the items identified in Federal Rule of Appellate Procedure 32(f).

 s/ Jonathan H. Eisenman  
Jonathan H. Eisenman

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Defendants' Petition For Permission To Appeal Order Granting Certification Of Plaintiffs' Classes

**Signature** | s/ Jonathan H. Eisenman | **Date** | Oct 17, 2022

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**          52          *Rev. 12/01/2018*